UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CARMELA A. RUSTICO,
                            Plaintiff,

        — against —                             **MEMORANDUM and ORDER**

MICHAEL J. ASTRUE, COMMISSIONER               05 CV 349 (SLT)
OF SOCIAL SECURITY,[1]

                            Defendant.
-----------------------------------------------------------X
**TOWNES, United States District Judge:**

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act. Defendant, the Commissioner of Social Security (the "Commissioner"), moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Plaintiff, Carmela A. Rustico ("Rustico" "Plaintiff" or "Claimant"), represented by counsel, cross-moves for judgment on the pleadings.

      For the reasons detailed below, the case is remanded for further administrative proceedings consistent with this Memorandum and Order.

## BACKGROUND

      Rustico filed an application for disability insurance benefits on June 16, 2001 claiming an inability to work since April 20, 2001 because of osteoporosis and osteoarthritis. (Administrative Transcript ("Tr.") 59-61, 69.)[2] The application was denied. (Tr. 25-29.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, with counsel,

---

[1] Michael J. Astrue has been substituted for Joanne Barnhart pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 25(d)(1) (providing that "[w]hen a public officer is a party to an action in an official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party").

[2] "Tr." refers to pages of the administrative record filed as part of the Commissioner's answer pursuant to 42 U.S.C. § 405(g).

appeared before ALJ Seymour Fier on June 23, 2003. The ALJ issued a decision on August 22, 2003 finding that Rustico's impairments did not prevent her from performing her past relevant work as an out-patient clerk, which qualified as sedentary work.[3] (Tr. 18-24.) After the Appeals Council denied Rustico's request for review on December 10, 2004, (Tr. 4-6.), Rustico filed a timely complaint here on January 21, 2005.

Rustico is currently 65 years old. (Tr. 198.) At the time of the hearing she was 60 years old. Rustico, a high school graduate, testified that she worked as an out-patient clerk for the Catholic Medical Center for twenty-two years before leaving its employ on April 2, 2001, because of her physical impairments. (Tr. 199.) Rustico, in part, complains of shoulder pain; an inability to lift or carry; severe pain in the neck, lower back, and right shoulder; radiating pain in her lower extremities; inability to lift, bend or carry heavy objects; and difficulty in sitting, standing and walking for a long period of time. (Tr. 120.) Rustico's treating physician, Dr. Harshad C. Bhatt,[4] diagnosed her with cervical radiculopathy, lumbar radiculopathy, internal derangement of the shoulder, right shoulder bursitis and capsulitis. (Tr. 122.) X-rays of the cervical spine showed marked osteopania, decreased density of the bone, and osteoarthritis. (*Id.*)

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[4] Dr. Bhatt practices Orthopedic and Sports Medicine.

**DISCUSSION**

*A.      Scope of Review*

Judicial review of disability insurance benefit determinations is governed by 42 U.S.C. § 1383(c)(3), which expressly incorporates the standards established by 42 U.S.C. § 405(g). In relevant part, § 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, the decision must be affirmed. The Supreme Court has defined "substantial evidence" to connote "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"Although factual findings by the Commissioner are binding when supported by substantial evidence, where an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ [as] [f]ailure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 188-189 (2d Cir. 2004) (internal quotation marks and citations omitted); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) ("This deferential ["substantial evidence"] standard of review is inapplicable, however, to the [Commissioner's] conclusions of law.").

*B.      Disability Determinations*

To qualify for disability insurance, a claimant must be deemed "disabled" as the term is defined by 42 U.S.C. § 423(d)(1)(A).

Disability is an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" consists of "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner determines whether a claimant meets the statutory definition of "disabled" in five, successive steps (the "Analysis"). 20 C.F.R. § 404.1520. The sequential evaluation process requires that: (1) if the claimant is gainfully employed then she will be found "not disabled"; (2) if the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities, then the analysis proceeds to the third step; (3) if the claimant's "severe" impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and has lasted or is expected to last for a continuous period of at least twelve months, then the claimant is disabled, if not, the analysis proceeds to the fourth step; (4) if after determining the claimant's residual functional capacity, the claimant can perform past relevant work, she will not be found disabled; and (5) if the claimant cannot perform any work she has done in the past, and the Commissioner determines that in conjunction with her residual functional capacity, age, education, and past work experience, she cannot engage in other substantial gainful work reasonably available in the national economy, she is disabled. *Id.*

In determining whether or not a particular claimant is "disabled," the combined effect of multiple impairments must be taken into consideration by the Commissioner:

> [i]n determining whether an individual's physical or mental impairment or impairments are of sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

42 U.S.C. § 1382c(a)(3)(G). The claimant bears the burden of proving disability. *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). In weighing the medical opinion evidence, the ALJ is obligated to adhere to the rules set forth in 20 C.F.R. § 404.1527. These rules provide that, generally, more weight is given to the following: (1) opinions provided by physicians who have actually examined the claimant; (2) opinions provided by a claimant's treating physicians; (3) opinions supported by objective relevant evidence; (4) opinions that are more consistent with the record evidence as a whole; (5) opinions of specialists about medical impairments related to their area of expertise; (6) opinions that may be supported by any other factors the claimant brings to the Commissioner's attention. 20 C.F.R. § 404.1527(d)(1)-(6). However, the Commissioner must give a treating physician's opinion "controlling weight" if his or her opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). This is the so-called "treating physician rule." The opinion of a treating physician as to the nature and severity of an impairment is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2). "While the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citations omitted). "Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Id.*

C.      *The ALJ's Determination*

In performing the analysis, the ALJ concluded that Rustico met the requirements for disability insured status through December 31, 2005.[5] (Tr. 18.) The ALJ found that Rustico had not engaged in substantial gainful activity subsequent to the alleged date of onset and that she suffered a severe impairment under the Social Security regulations. (Tr. 21). Although the ALJ found that Rustico's impairments were severe, he concluded that they were not "attended by medical findings that meet or equal the requirements of any listed impairment found in the Listed Impairments." (Tr. 21.)

Reaching the fourth step of the analysis, the ALJ determined that Rustico retained the residual functional capacity for the full range of sedentary work. (Tr. 22). A claimant's residual functional capacity is not concerned with the type of impairment, but only the tasks a claimant remains able to perform after the abilities that are significantly impaired by the disability are removed. In this case, the ALJ found that Rustico's "capacity for sitting [was] only mildly

---

[5] To qualify for SSD benefits, one must be both disabled and insured for disability benefits. 42 U.S.C. § 423(a)(1)(A) and (C); 20 C.F.R. §§ 404.101, 404.120, and 404.315(a). The last date that a person meets these requirements is commonly referred to as the date last insured, or the "DLI." Rustico's DLI is December 31, 2005 and for her to qualify for SSD benefits, the onset of her disability must have occurred on or before December 31, 2005.

reduced. She can sit for at least 6 hours per day taking normal breaks, and lift and carry light objects such as files. The claimant's past relevant work was exertionally sedentary." (Tr. 22).

### 1. Medical Evidence, Reports of Treating and Examining Physicians[6]

On April 23, 2001, Rustico's treating physician, Dr. Harshad C. Bhatt, examined Rustico after she was involved in a motor vehicle accident. (Tr. 120, 169.) Dr. Bhatt summarized Rustico's complaints to include: shoulder pain; an inability to lift or carry; severe pain in the neck, lower back, and right shoulder; radiating pain in both her lower extremities; inability to lift, bend or carry heavy objects; and difficulty sitting, standing and walking for a long period of time. (Tr. 120.) Following his examination, Dr. Bhatt diagnosed cervical radiculopathy, lumbar radiculopathy, internal derangement of the shoulder, right shoulder bursitis and capsulitis. (Tr. 122.) Ex-rays of the cervical spine showed marked osteopania, a decreased density of the bone, and minimal degenerative osteoarthritis. (Tr. 136.) Dr. Bhatt issued a "disability certificate" in which he indicated that Rustico was "totally disabled" between April 23, 2001 and May 10, 2001 and unable to work due to severe degenerative joint disease and osteoporosis. (Tr. 147) In visits between May and July 2001, Dr. Bhatt's diagnosis remained unchanged. (Tr. 113, 115-16, 118-19.)

In a Social Security residual functional capacity form dated July 11, 2001, Dr. Bhatt summarized Rustico's ailments to include: cervical radiculopathy; spinal stenosis; osteoporosis; fibromyalgia; spondylosis, and multiple neuropathies. (Tr. 138.) Laboratory findings showed osteoporosis from bone density examinations. (Tr. 139.) Dr. Bhatt wrote that Rustico's pain

---

[6] This decision provides only a brief summary of the medical evidence. Both the Commissioner and Rustico provide accurate and detailed summaries of the medical evidence before the ALJ.

-7-

affected her daily activities leaving her unable to work in any capacity. (Tr. 142.) Noting Rustico's limitations, Dr. Bhatt observed that she could only lift and carry up to ten pounds; stand and/or walk less than two hours per day; sit less than six hours per day; and she was "not allowed" to push and/or pull. (Tr. 143.) Rustico's complaints, treatment and prognosis continued virtually unchanged through September 2001. (Tr. 108, 106-07, 99-101.)

Dr. Bhatt completed a Narrative Report, dated February 7, 2002, and, in it, reported his findings after examining Rustico. (Tr. 169-74.) Dr. Bhatt gave a "guarded" prognosis and diagnosed the aforementioned ailments. (Tr. 174.) Dr. Bhatt also wrote that Rustico had "positive MRI with clinical signs of torn rotator cuff of right shoulder. Patient will need long-term conservative therapy .... Patient has medical necessity for MRI of cervical spine, lumbar spine and shoulder." (*Id.*) At the time, Rustico was also under the care of Satish Chawla, M.D., for hyperthyroidism and tachycardia. (Tr. 168.)

In a Multiple Impairments Questionnaire dated March 7, 2003, Dr. Bhatt reported that Rustico had marked limitations, meaning a general inability to perform the activity, in the use of both hands for grasping, turning, and twisting objects, use of the fingers and hands for fine manipulations, and use of the arms for reaching. (Tr. 182-83.) Dr. Bhatt noted that the symptoms and limitations detailed in the questionnaire applied since 2001. (Tr. 185.)

### 2. Other Evidence

On October 22, 2001, Dr. Finger, a consultative examiner for the Social Security Administration ("SSA"), examined Rustico and gave her a "fair" prognosis with moderate limitations in connection with work related activities. (Tr. 96.)

In December 2002, D. Rosenberg, M.D., a state agency physician, concluded that Rustico had the residual functional capacity for medium work. (Tr. 149.) Dr. Rosenberg did not examine Rustico but reviewed her medical record and assessed her residual functional capacity. He found that Rustico could occasionally lift and carry fifty pounds, sit and stand for about six hours in a workday. (Tr. 152.) He made no findings as to whether Rustico could push and pull using her upper extremities. To the question, "Are there treating/examining source conclusions about the claimant's limitations or restrictions which are significantly different from your findings?," Dr. Rosenberg replied in the negative. (Tr. 157.) Dr. Rosenberg also wrote: "TMD Bhatt says claimant is severely restricted, but that opinion is not accepted because it is not well supported by the med[ical] evid[ence.] CE MD Dr. Finger says claimant is moderately limited, but that opinion is not accepted because it is not well supported by the med[ical] evid[ence]." (Tr. 157.)

### 3. Hearing Testimony

Rustico testified that she worked on a computer for six hours a day and could only leave her desk for bathroom breaks. (Tr. 199). She stopped working because she was in pain, prompting her to undergo a bone density test yielding a diagnosis of osteoporosis and arthritis in her back and spine. (Tr. 199). To combat these ailments, Rustico started physical therapy in April 2001 but ceased therapy in October 2001 because her health insurance no longer covered the treatment. (Tr. 199).

Rustico testified that her activities included watching television, shopping daily because she was unable to carry many items, visiting her children, cooking and occasionally driving an automobile. (Tr. 203). Rustico could not drive for more than a half hour. (Tr. 208.) Her

husband cleaned the home. (Tr. 207). She explained that pain began in her neck and spread to her shoulders and, at times, her lower back. (Tr. 206). She experienced pain in her entire back, (Tr. 208), and also complained of headaches. (Tr. 206). Rustico surmised that she could sit for approximately three hours to perform computer-related work but that her place of employ would not accommodate her condition. (Tr. 207).

On behalf of the Commissioner, Dr. Richard Ores testified as an impartial medical expert. (Tr. 209-212, Tr. 18.) As a result of his review of the evidence in the case, Dr. Ores opined that Rustico could "sit for one hour, four hours, and walk for one hour" and that she endured pain in the neck, the right shoulder, her lower back and suffered occasional stomach pains and headaches. He noted that she drove a car and could walk two blocks if followed by rest for ten minutes. She could neither lift heavy objects nor pull an object. (Tr. 209-210). Dr. Ores reported that an x-ray indicated that the lumbar sacral spine was normal. (Tr. 210). He also stated that "Dr. Chawla" found that Rustico was "more limited in durational time"; was able to sit; "moderately limited in duration of time she's able to stand, moderately limited in the distance she could ambulate"; the x-ray of the umbral sacral spine was negative.[7] (Tr. 211).

During questioning by claimant's attorney, Dr. Ores stated that Rustico would have a moderate limitation in sitting for four hours per day. (Tr. 211-12). The transcript reads:

> Q: And also the consultative examiner had said that she has
> moderate limitations, and . . . let's focus on sitting right now.
> Does it make sense to you, doctor, that a claimant, a 60 year old
> claimant who is required to sit for six hours out of the day with this
> condition, with marked osteopina, does it make sense to you that
> she'd have difficulty doing that?

---

[7] Dr. Ores' reference to Dr. Chawla appears to be in error. The administrative record contains only a February 2, 2002 prescription drug note in which Dr. Chawla reported that claimant was under his care for hyperthyroidism and tachycardia. (Tr. 168.)

> A: Yeah, but no, she doesn't have to sit constantly.
> Q: Well, let's assume, let's assume that –
> A: Then she has marked osteopina she may, she may have pain in her back, whatever she complained about, she had [*inaudible*].
> Q: So doctor, would you agree that she would have a moderate limitation in sitting?
> A: Moderate, yes.
> Q: So . . . out of an eight hour day, what would you say a moderate limitation . . .
> A: Four hours.

(Tr. 212).

### D.    *Analysis*

#### 1.  **Residual Functional Capacity**

The residual functional capacity is what a claimant remains capable of doing despite any impairments, severe or otherwise. 20 C.F.R. § 404.1545(a). The residual functional capacity is determined by considering all relevant evidence, consisting of physical abilities, symptoms including pain, and descriptions, including those provided by the claimant, of limitations which go beyond the symptoms. 20 C.F.R. § 404.1545. Physical capabilities are determined by evaluation of exertional and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis. 20 C.F.R. § 404.1567; 20 C.F.R. § 404.1569a. To determine whether a claimant can do a certain category of work, the ALJ must determine the claimant's strength limitations, or exertional capacity, which include the ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a(a). Nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(vi).

A claimant's residual functional capacity can only be established when there is substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen*,

737 F.Supp. 180, 183 (N.D.N.Y. 1990). The ALJ's finding must specify the functions the claimant is capable of performing; conclusory statements regarding the claimant's capacities are insufficient. *Id.*; *Kendall v. Apfel*, 15 F. Supp. 2d 262, 268 (E.D.N.Y. 1998). The residual functional capacity is then used to determine particular types of work a claimant could perform. 20 C.F.R. § 404.1545(a)(5).

As defined in 20 C.F.R. § 404.1567(a), sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Sedentary work is the least rigorous of the five categories of work which include "very heavy, heavy, medium, light, and sedentary." 20 C.F.R. § 404.1567. Generally, sedentary work involves "up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (internal citation omitted).

This Court cannot ascertain which medical evidence the ALJ relied upon in concluding that Rustico retained the residual functional capacity for the full range of sedentary work. Prior to reaching his conclusion, by way of introduction or summary it appears, the ALJ chronicled some, but not all, of claimant's medical history contained in the record. The ALJ does not explain what evidence persuaded him that Rustico can return to her past relevant work. He only stated that "in reaching this conclusion [he had] taken into account" Rustico's treating physician's opinion that plaintiff was disabled. (Tr. 22.)

### 2. The Treating-Physician Rule

"The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir.1999); 20 C.F.R. § 404.1527(d)(2). An ALJ is required to provide "good reasons" to accord the opinion other than controlling weight. *See Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(d)(2). "We do not hesitate to remand when the Commissioner ... do[es] not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 326 F.3d at 33. Moreover, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa*, 168 F.3d at 79. Instead, the ALJ has an affirmative duty to develop the administrative record, regardless of whether the claimant is proceeding pro se or is represented by counsel. *Id.*; *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996).

Because the ALJ does not point to any substantial evidence in the record to establish that Rustico can perform her past work, this Court can neither grant the Commissioner's motion for judgment on the pleadings nor conclude that the ALJ's finding is supported by substantial evidence.

Following his finding as to Rustico's residual functional capacity, the ALJ found that Dr. Bhatt's opinion was not supported by "objective evidence" and "[h]is reported findings, though significant, [did] not rise to the level of disability." (Tr. 22). The sum of the ALJ's treatment of Dr. Bhatt's findings follows:

> [I]t is significant to note that while Dr. Bhatt has diagnosed a disc herniation, there is no radiological evidence to confirm this. . . . Dr. Bhatt's reported neurological findings are not consistent with disability. This lack of corroborative evidence was pointed out by the state agency at Exhibit 3F of the record. . . . Also, the claimant engages in a reasonably broad range of daily living activities that

> are at odds with Dr. Bhatt's conclusions. Consequently, Dr. Bhatt's opinion is not sufficiently supported by objective evidence of record, and is not given controlling, or even great, weight.

(Tr. 22).

It is evident that the ALJ improperly applied the treating physician rule. First, the ALJ refers to Exhibit 3F (Tr. 149.) to conclude that Dr. Bhatt's lack of corroborative evidence was noted by the state agency. (Tr. 22.) Exhibit 3F, titled "Request for Medical Advice," is a form completed by a state analyst from the Division of Disability Determinations. The analyst had requested an RFC from Dr. Rosenberg. The document states: "Per CE MD, it is 'moderately' limited however, TM D Bhatt seems to indicate it is severely limited. Dr. Bhatt sent copies of his office notes [illegible] 9/14/01. Please RFC. Thank you." *Id.* For advice, Dr. Rosenberg writes "Minimal findings @CE. RFC medium." *Id.* Rustico correctly points out that Exhibit 3F bears no mention of "lack of corroborative evidence [] pointed out by the state agency."

From the ALJ's limited discussion, it is unclear how he considered Dr. Bhatt's findings or if he placed any import on those findings. An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give the opinion. 20 C.F.R. § 404.1527(d)(2). These factors include: (i) the frequency of examination and the length, nature and extent of treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that support or contradict the opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The regulations also require the ALJ to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.* Failure to follow this

standard constitutes a failure to apply the proper legal standard and is grounds for reversal. *Johnson v. Bowen*, 817 F.2d 984, 986 (2d Cir. 1987).

The ALJ simultaneously writes that Dr. Bhatt's findings were "significant" but Dr. Bhatt's findings do not warrant "controlling, or even great, weight." (Tr. 22.) Pursuant to 20 C.F.R. § 404.1527, the reports of consultative or non-examining physicians may constitute substantial evidence of disability and override the opinions of treating physicians. However, Dr. Bhatt's findings are not contradicted by substantial evidence in the record. Indeed, to the question, "Are there treating/examining source conclusions about the claimant's limitations or restrictions which are significantly different from your findings?," Dr. Rosenberg – the state agency physician who performed a residual functional capacity assessment without examining Rustico – replied that they were not. (Tr. 157.)

The ALJ writes that Dr. Bhatt's "opinion is contradicted by the report of Dr. Finger, the consultative examiner, whose reported findings failed to establish disability and who found that the claimant had only moderate functional limitations." (Tr. 22.) Dr. Finger examined Rustico and issued his findings in a two-page report. (Tr. 95-96.) Dr. Finger noted that Rustico had not had any CAT scans or MRIs performed but did have routine x-ray studies evidencing osteoporosis of the lumbar spine and arthritic changes. (Tr. 95-96.) Dr. Finger gave a "fair" prognosis and diagnosed chronic lower back derangement, history of trauma to the coccyx, and chronic derangement involving the cervical spine. (Tr. 96.) Dr. Finger found that Rustico, with respect to work related activities, appeared "moderately limited in duration of time she is able to sit, moderately limited in duration of time she is able to stand, moderately limited in the distance

she could ambulate, and moderately limited in her ability to lift or carry as a result of all these factors." (Tr. 96.)

The Court does not see a clear contradiction here. Dr. Finger found that Rustico suffered from impairments to her lower back and noted that Rustico was moderately limited. Dr. Finger's report indicated that Rustico's x-ray studies evidenced osteoporosis of the lumbar spine and arthritic changes. (Tr. 95.) These physicians disagree as to the severity of Rustico's limitations, but they agree that she suffers from impairments that limit her ability to work. "Such falls far short of the standard for contradictory evidence required to override the weight normally assigned the treating physician's opinion." *Shaw*, 221 F.3d at 134. Furthermore, Dr. Finger's prognosis is undermined by the reviewing state agency physician, Dr. Rosenberg. Dr. Rosenberg wrote that "TMD Bhatt says claimant is severely restricted, but that opinion is not accepted because it is not well supported by the med[ical] evid[ence.] CE MD Dr. Finger says claimant is moderately limited, but that opinion is not accepted because it is not well supported by the med[ical] evid[ence]." (Tr. 157.) The ALJ does not address this inconsistency between the physicians reviewing the medical record and examining Rustico on the Commissioner's behalf.

Furthermore, the value of Dr. Finger's brief assessment is unknown. Rustico argues that Dr. Finger's diagnosis should not be given great weight because Dr. Finger, as an internist, provided only a general diagnosis and his opinion was not sufficiently precise to outweigh Dr. Bhatt's more careful assessment. (Claimant's Brief at 17). Rustico takes issue with Dr. Finger's use of the word "moderately" to describe her ability to sit, stand, walk, lift and carry and label's his assessment as "imprecise." *Id*. Indeed, Dr. Finger does not define his use of the

-16-

phrase moderate functional limitations.  More importantly, it is not clear why the ALJ considers Dr. Finger's two-page report more valuable than Dr. Bhatt's multiple reports summarizing his multiple examinations of the claimant.  "Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal citations omitted).

The ALJ committed further error by failing to analyze the factors outlined in 20 C.F.R. § 404.1527(d).  There is nothing in the record establishing that the ALJ considered the relationship between Dr. Bhatt and Rustico, nor the presentation and consistency of other evidence in the record which supports Dr. Bhatt's diagnosis.  Nor is there any evidence that the ALJ considered that Dr. Bhatt was a board-certified orthopedist.

Although the ALJ does not expressly state that the lack of MRI, CAT scan or other testing of Rustico helped form his conclusion that Dr. Bhatt's opinion was not supported by objective medical evidence, the ALJ's decision repeatedly refers to this lack of testing. Dr. Finger also noted the lack of testing.  However, neither Dr. Finger nor the ALJ ordered additional testing.  During the hearing, Rustico stated that she could not afford an MRI.  Rustico picks up on the ALJ's intimation and cites to the ALJ's finding "that while Dr. Bhatt has diagnosed disc herniation, there is no radiological evidence to confirm [a disc herniation]." (Tr. 22.)  Thus Rustico argues that the ALJ failed to develop the record adequately.  The ALJ must "affirmatively develop the record" in light of "the essentially non-adversarial nature of a benefits proceeding."  *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (*quoting Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)).  This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a determination and

exists even when, as here, the claimant is represented. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). In *Rosa*, 168 F.3d at 79, the Second Circuit held that "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."

A claimant's inability to afford diagnostic tests should factor into an ALJ's decision when he relies on the lack of such testing to reject a treating physician's opinion. At the very least, the ALJ should have asked Dr. Bhatt why an MRI, a CAT scan or other testing was not performed. Similarly, the ALJ could have asked Dr. Finger if additional testing was necessary. That an MRI or CAT scan was not undertaken does not demonstrate that Rustico is any more or less disabled pursuant to or under the regulations.

The ALJ relies heavily on Exhibit 3F which states that Rustico's residual functional capacity is "medium" and there were "minimal findings" at the consultative examination. Per the regulations, medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §404.1567. The two physicians who actually examined Rustico did not come to this conclusion. Because the ALJ fails to address the inconsistencies in the medical record, remand is warranted.

The ALJ is further ordered to refrain from making medical findings and to reevaluate Rustico's credibility. He concluded that "Dr. Bhatt's reported neurological findings are not consistent with disability;" (Tr. 22.) and commented that Rustico's "medical treatment has been conservative [and] [h]er medications have not been unusual for either type or dosage." (Tr. 22.) *See Wagner v. Secretary of Health and Human Servs*., 906 F.2d 856, 862 (2d Cir. 1990) ("circumstantial critique by non-physicians, however thorough or responsible, must be

overwhelmingly compelling in order to overcome a medical opinion.") Because the ALJ finds that claimant is not credible, he must set forth the reasons for that finding "with sufficient specificity to permit intelligible plenary review of the record" on remand. *William ex rel. Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) (internal citations omitted).

## E. Remand

Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988).

Generally, remand to the Commissioner for further development of the evidence is appropriate where the ALJ has applied the improper legal standard. *Rosa*, 168 F.2d at 82-83. The Second Circuit Court of Appeals instructs "that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir.2004).

This is not a case where there is overwhelming evidence of disability in the administrative record. On the other hand, the ALJ's decision is replete with conclusory statements and without specific reference to the medical record necessary for effective review of the Commissioner's decision. Because the ALJ has misapplied the relevant legal standards and failed to develop the record adequately, a remand to the Commissioner is necessary. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996)(quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)); *see also Rosa*, 168 F.3d at 83.

## **CONCLUSION**

The Commissioner's and Rustico's motions for judgment on the pleadings are denied. The decision of the Administrative Law Judge is vacated and the case is remanded for further proceedings consistent with this opinion. The Commissioner is ordered to commence proceedings within sixty days of this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York
June 30, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge